IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAYMOND COLDANI,

       Plaintiff,

   v.

JACK HAMM and PATRICIA HAMM,
individually and doing business
as LIMA RANCH/DAIRY,

      Defendants.

_____/

No. Civ. S-07-660 RRB EFB

Memorandum of Opinion
and Order

Raymond Coldani ("Coldani") filed a citizen suit against
Jack Hamm and Patricia Hamm individually and doing business as
Lima Ranch/Dairy (collectively "Lima Ranch") seeking to enforce
regulations promulgated under the Clean Water Act ("CWA") and
the Resource Conservation and Recovery Act ("RCRA").  Coldani
seeks a declaration that Lima Ranch has violated the CWA.
Additionally, Coldani seeks injunctive relief in the form of an
order requiring Lima Ranch to comply with the regulations

controlling its operations and to abate the consequences of its regulatory violations.  Lima Ranch now moves for a dismissal of the entire action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure section 12(b)(1).  For the following reasons, the court GRANTS in part, and DENIES in part, the motion to dismiss.[1]

## I.   BACKGROUND

Jack and Patricia Hamm own and operate Lima Ranch, a dairy cow operation encompassing several hundred acres.  Compl. ¶ 2.  The ranch contains at least 1,000 dairy cows and its operations include milking, waste collection, waste storage and waste water discharge.  Compl. ¶ 3.

Coldani owns a substantial amount of property adjacent to and in the vicinity of Lima Ranch.  Compl. ¶¶ 2 & 45.  Coldani alleges that Lima Ranch's disposal of animal waste has caused the groundwater beneath, and surrounding the ranch (including his property), to become polluted by, among other things,

---

[1]     Inasmuch as the court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).  As a result, the oral argument presently scheduled for August 8, 2007, at 10:00 a.m., is hereby **VACATED**.

nitrates.  Compl. ¶ 4.  Coldani alleges that the groundwater has become polluted due to nitrate-containing discharges that originate from leaks, percolations, infiltration and/or seepage of animal waste from, among other things, the waste storage ponds and irrigation water applied by Lima Ranch to its fields. Compl. ¶¶ 33-34.  Coldani alleges that the polluted groundwater migrates onto his property and into the White Slough, which is hydrologically connected to the Sacramento-San Joaquin River Delta system; a navigable water located less than a mile from Lima Ranch.  Compl. ¶¶ 4, 32, 34 & 38.

Coldani contends that Lima Ranch's discharge of animal waste is in violation of federal solid waste regulations, state laws and municipal ordinances.  Compl. ¶¶ 5, 26-27.  Coldani further contends that such conduct is causing imminent and substantial endangerment to health and the environment as well as interfering with his use and enjoyment of the surface water, groundwater, air and soils of his property.  Compl. ¶¶ 26-27, 35-39, 45 & 47.  As such, Coldani seeks relief in the form of an order requiring Lima Ranch to immediately address its violations of solid waste regulations, including abatement and remediation of the pollution.  Compl. ¶¶ 5 & 48-49.

Lima Ranch now moves for dismissal of the entire action on the following grounds: (1) Coldani lacks standing under the CWA and the RCRA because he failed to serve notice on all required

parties; (2) Coldani lacks standing under the CWA because he failed to allege a violation of an effluent standard or limitation as defined in the CWA, or a violation of an order issued by the Administrator or State regarding a CWA standard or limitation; and (3) Coldani lacks standing to assert a claim under the RCRA because he failed to allege that Lima Ranch disposed of any "hazardous waste" as defined in the Act.  Def.'s Mot. at 3-15.

## II. DISCUSSION

A.   Legal Standard

The plaintiff bears the burden of establishing subject matter jurisdiction and trial courts will presume a lack of jurisdiction until the plaintiff proves otherwise.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377; Ass'n of American Medical Colleges v. U.S., 217 F.3d 770, 778 (9th Cir. 2000);  Sun Microsystems Inc. v. Hynix Semiconductor Inc., 2007 WL 1056783, *2 (N.D. Cal. 2007).

A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth

4

of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (noting that an attack was factual where a defendant challenged plaintiff's contention that grass residue constitutes solid waste under RCRA).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Safe Air for Everyone, 373 F.3d at 1039.  The court need not presume the truthfulness of the plaintiff's allegations.  Id.  Once the moving party makes a factual attack on jurisdiction by submitting affidavits or any other evidence properly before the court, the opposing party must then submit affidavits or any other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.  Id.; Ass'n of American Medical Colleges, 217 F.3d at 778; see also Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) ("it is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss.")  It is not an abuse of discretion for a court to look to extra-pleading material in deciding subject matter jurisdiction, even if it becomes necessary to resolve factual disputes.  Ass'n of American Medical Colleges, 217 F.3d at 778.

Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and are only permitted "'where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'" Roberts, 812 F.2d at 1177; Safe Air for Everyone, 373 F.3d at 1039.

The district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. Safe Air for Everyone, 373 F.3d at 1039. Put another way, a jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action. Id.[2]

"The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" See Safe Air for

---

[2]    Where jurisdiction is intertwined with the merits, courts assume the truth of the allegations in the complaint unless controverted by undisputed facts in the record. Warren, 328 F.3d at 1139.  The court, however, does not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

<u>Everyone</u>, 373 F.3d at 1039-40 (observing that because the RCRA provided the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, the question of jurisdiction and the merits of this action were intertwined).

When the question of jurisdiction and the merits of the action are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the court should view the motion as one for summary judgment, not for dismissal.  <u>Id</u>. at 1040 (holding that because the issue of whether a citizen suit alleged a claim within the reach of the RCRA goes to the merits of the action, it reviewed the dismissal of such action as a grant of summary judgment); <u>see</u> <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983) (in ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court employs the summary judgment standard, as a resolution of the jurisdictional facts which is akin to a decision on the merits).

B.   CWA & RCRA Jurisdiction

Lima Ranch seeks to dismiss the entire action for lack of subject matter jurisdiction because Coldani failed to provide proper notice under the CWA and RCRA.

//

//

1. CWA

Under the Clean Water Act, a citizen may commence a civil action on his own behalf against any person who is alleged to be in violation of (1) an effluent standard or limitation or (2) an order issued by the Administrator or a State with respect to such a standard or limitation.  33 U.S.C. § 1365 (a)(1).  The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation.  33 U.S.C. § 1365(a)(2).

No action may be commenced under § 1365 (a)(1) prior to sixty days after the plaintiff has given notice of the alleged violation to: (1) the Administrator; (2) the State in which the alleged violation occurred; and (3) any alleged violator of the standard, limitation, or order.  33 U.S.C. § 1365(b)(1)(A). Notice under the CWA shall be given in such manner as the Administrator shall prescribe by regulation.  33 U.S.C. § 1365(b)(2).

The EPA has adopted such regulation, which mandates as follows: "Notice of intent to file suit pursuant to section 505(a)(1) of the [Clean Water] Act shall be served upon an alleged violator of an effluent standard or limitation under the Act, or an order issued by the Administrator or a State with respect to such a standard or limitation, in the following

manner: (1) If the alleged violator is an individual or corporation, service of notice shall be accomplished by certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation.  A copy of the notice shall be mailed to the Administrator of the Environmental Protection Agency, the Regional Administrator of the Environmental Protection Agency for the region in which such violation is alleged to have occurred, and the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred. If the alleged violator is a corporation, a copy of such notice also shall be mailed to the registered agent, if any, of such corporation in the State in which such violation is alleged to have occurred."  40 C.F.R. § 135.2.

The purpose of this rule is "'to give [the alleged violator] an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit.'" Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 950 (9th Cir. 2002) ("Bosma") (quoting Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 60 (1987)).  Compliance with the sixty-day notice requirements in the Clean Water Act is a mandatory precondition to suit.  Washington Trout v. McCain

Foods, Inc., 45 F.3d 1351, 1354 (9th Cir. 1995) (citing

Hallstrom v. Tillamook County, 493 U.S. 20, 26 (1989)

(interpreting the notice requirements under the RCRA)); see also

New Mexico Citizens for Clean Air and Water v. Espanola

Mercantile Co., 72 F.3d 830, 833 (10th Cir. 1996) (citing

cases).  If notice is insufficient as required by the

regulations promulgated under the CWA, dismissal for lack of

subject matter jurisdiction is appropriate.  Washington Trout,

45 F.3d at 1354-55.

In the instant case, Lima Ranch argues that Coldani's

notice is defective because Coldani failed to serve notice on

the State Water Resources Control Board or the Regional Board.

Coldani argues that he satisfied the pre-suit notice

requirements under the CWA because he sent notice to the

Secretary of CAL/EPA,[3] who is the state's highest ranking

environmental official serving as the head of all the state's

environmental agencies, including the Integrated Waste

Management Board and State Water Resources Control Board.  Thus,

---

[3]   Coldani asserts that in 1991, the governor created the
California Environmental Protection Agency ("CAL/EPA") and
consolidated the following branches under one umbrella: the
Office of the Secretary for Environmental Protection, the Air
Resources Board, the Integrated Waste Management Board, the
State Water Resources Control Board (including the Regional
Water Quality Control Boards), the Department of Toxic
Substances Control, the Department of Pesticide Regulation, and
the Office of Environmental Health Hazard Assessment.  Pl.'s
Request for Judicial Notice, Exh. A.

the issue is whether serving notice to the Secretary of CAL/EPA satisfies the notice requirements of the CWA.  That is, does it satisfy the Act's requirement that notice be sent to "the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred." See 40 C.F.R. § 135.2.

In the present case, Lima Ranch does not dispute that notice was sent to the Secretary of CAL/EPA.  Rather, Lima Ranch contends that Coldani's failure to serve notice to the chief administrator of the State Water Resources Board violates the pre-suit notice requirements of the CWA.  Thus, the task of this court is to determine whether notice to the Secretary of CAL/EPA is sufficient to satisfy the notice requirements of the CWA. The court finds that such notice is sufficient because it fulfills the purpose of the CWA's notice requirements.

The Governor's 1991 Reorganization Plan states that the Secretary of CAL/EPA fulfills the Agency Secretary rolls for the Boards, Departments and Offices within CAL/EPA, including Agency Secretary oversight over the Water Resources Control Board. Pl.'s Request for Judicial Notice, Exh. A.  The plan also states that the Secretary of CAL/EPA serves as the primary point of accountability to the governor and is responsible for bringing together functions which cut-across the various programs designed to address pollution, including water and ground water

pollution.  Pl.'s Request for Judicial Notice, Exh. A.  Finally, the plan states that one of the primary objectives of the CAL/EPA agency is to ensure the vigorous, predictable enforcement of environmental regulations.

Based on the foregoing, the court concludes that Coldani has satisfied the notice requirements of the CWA because he served notice to the Secretary of CAL/EPA, the official who has been charged with fulfilling the Agency Secretary role of the State Water Resource Board.  Moreover, such notice is sufficient because it fulfills the purpose of the CWA's notice requirements by giving the state an opportunity to take administrative action and therefore render a citizen suit unnecessary.

2. RCRA

Under the RCRA, any person may commence a civil action on his own behalf against any person, "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]"  42 U.S.C. § 6972(a)(1)(B). "The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous

waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, . . .  and to apply any appropriate civil penalties under section 6928(a) and (g) of this title."  42 U.S.C. § 6972(a)(2).

No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to: (1) the Administrator; (2) the State in which the alleged endangerment may occur; and (3) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section.  42 U.S.C. § 6972(b)(2)(A)(i-iii).

The EPA has adopted a notice regulation, which mandates as follows: "Notice of intent to file suit under subsection 7002(a)(1) of the [Solid Waste Disposal] Act shall be served upon an alleged violator of any permit, standard, regulation, condition, requirement, or order which has become effective under this Act in the following manner: (1) If the alleged violator is a private individual or corporation, service of notice shall be accomplished by registered mail, return receipt requested, addressed to, or by personal service upon, the owner or site manager of the building, plant, installation, or facility alleged to be in violation.  A copy of the notice shall

be mailed to the Administrator of the Environmental Protection

Agency, the Regional Administrator of the Environmental

Protection Agency for the region in which the violation is

alleged to have occurred, and the chief administrative officer

of the solid waste management agency for the State in which the

violation is alleged to have occurred.  If the alleged violator

is a corporation, a copy of the notice shall also be mailed to

the registered agent, if any, of that corporation in the State

in which such violation is alleged to have occurred."  40 C.F.R.

254.2.

Compliance with the notice requirements of the RCRA is a

mandatory, not optional, condition precedent for suit.

Hallstrom, 493 U.S. at 26.  If notice is insufficient as

required by the regulations promulgated under the RCRA,

dismissal for lack of subject matter jurisdiction is

appropriate.  Id. at 33.

In the instant action, Lima Ranch argues that Coldani's

notice is defective because Coldani failed to send a copy of the

notice to the California Integrated Waste Management Board.[4]  As

discussed above, the court concludes that Coldani's notice to

---

[4]   The California Waste Management Board is designated as the
"state solid waste management agency for all purposes stated in
the Federal Resource Conservation and Recovery Act of 1976 (42
U.S.C. Sec. 6901 et seq.) and any other federal act heretofore
or hereafter enacted affecting solid waste."  Cal. Pub. Res.
Code § 40508.

the Secretary of CAL/EPA is sufficient to satisfy the notice requirements of the RCRA because the Secretary of CAL/EPA has been charged with fulfilling the Agency Secretary role of the Integrated Waste Management Board.  Moreover, such notice is sufficient because it fulfills the purpose of the RCRA's notice requirements by giving the state an opportunity to take administrative action and therefore render a citizen suit unnecessary.

C.   CWA Standing

Lima Ranch argues that Coldani lacks standing to assert a claim under the CWA because he failed to plead facts sufficient to satisfy the "navigable water" and "point source" elements of a CWA claim.  See Headwaters, Inc. v. Talent Irrigation Dist., 243 F.3d 526, 532 (9th Cir. 2001) ("To establish a violation of the CWA's NPDES permit requirement, a plaintiff must show that defendants (1) discharged (2) a pollutant (3) to navigable waters (4) from a point source").

1. Navigable Waters

"The primary objective of the CWA is to 'restore and maintain the chemical, physical and biological integrity of the Nation's waters.'  To effectuate this objective, one of the CWA's principal sections strictly prohibits discharges of pollutants into the 'navigable waters of the United States'

without an NPDES[5] permit from the Environmental Protection Agency

("EPA")." Northern California River Watch v. City of

Healdsburg, 457 F.3d 1023, 1025-26 (9th Cir. 2006) (citations

omitted and footnote added); see Bosma, 305 F.3d at 946

(observing that it is unlawful to discharge any pollutant into

the waters of the United States except those discharges made in

compliance with the CWA, i.e., discharges made pursuant to a

NPDES permit).

    "Navigable waters" are defined under the CWA to mean

"'waters of the United States.'" Northern California River

Watch, 457 F.3d at 1026 (quoting 33 U.S.C. § 1362(7)). The CWA

is a broad statute, reaching waters and wetlands that are not

navigable or even directly connected to navigable waters. See

United States v. Riverside Bayview Homes, Inc., 474 U.S. 121,

133-35 (1985) (agreeing with the Army Corp of Engineers that

wetlands adjacent to navigable waters should be included within

the purview of the CWA because water moves in hydrologic cycles,

and the pollution of one part of the aquatic system, will affect

the water quality of the other waters within that aquatic

system).[6]

_____

[5]   National Pollution Discharge Elimination System.
[6]   In Riverside Bayview, the Court concluded that "'waters of
the United States' encompassing all wetlands adjacent to other
bodies of water over which the Corps has jurisdiction is a
permissible interpretation of the Act." Riverside Bayview, 474

The EPA has defined waters of the United States to include: "all other waters such as intrastate lakes, rivers, streams (including intermittent streams) . . . [and] sloughs, . . . the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce[,]" and "tributaries of [those] waters." 40 C.F.R. 122.2(c), (e)); see Headwaters, 243 F.3d at 533 (citing cases) (holding that irrigation canals are "waters of the United States" because they are tributaries to the natural streams with which they exchange water); Bosma, 305 F.3d at 954-55 (holding that a drain discharging manure waste qualified as a navigable water tributary because it drained into an irrigation canal which in turn discharged into a river (i.e., navigable water)); United States v. Phillips, 367 F.3d 846, 851-52 (9th Cir. 2004) (holding that CWA jurisdiction could be exercised over a creek which emptied into a larger creek, which in turn flowed into a navigable river).

Recently, in Rapanos v. United States, 126 S.Ct. 2208 (2006), the United States Supreme Court set forth the standard by which a wetland is covered by the CWA.  There, the Court held that only wetlands with a significant nexus to a navigable-in-

_____

U.S. at 135.  This is because "wetlands adjacent to lakes, rivers, streams, and other bodies of water may function as integral parts of the aquatic environment even when the moisture creating the wetlands does not find its source in the adjacent bodies of water."  Id.

fact waterway are covered under the CWA.  <u>Rapanos v. United</u>

<u>States</u>, 126 S.Ct. 2208, 2248 (2006) (Kennedy, J., concurring).[7]

Justice Kennedy explained that "wetlands possess the requisite

nexus, and thus come within the statutory phrase 'navigable

waters,' if the wetlands, either alone or in combination with

similarly situated lands in the region, significantly affect the

chemical, physical, and biological integrity of other covered

---

[7]    Two recent Ninth Circuit cases have applied <u>Rapanos</u>.  <u>See</u>
<u>San Francisco Baykeeper v. Cargill Salt Div.</u>, 481 F.3d 700, 707
(9th Cir. 2007) (applying <u>Rapanos</u> and noting that Justice
Kennedy's concurrence is the controlling opinion); <u>Northern</u>
<u>California River Watch</u>, 457 F.3d at 1029 (applying <u>Rapanos</u> and
observing that because Justice Kennedy's vote constituted the
fifth vote for reversal, and because he only concurred in the
judgment, his opinion provides the controlling rule of law).  In
<u>San Francisco Baykeeper</u>, the court concluded that a pond
adjacent to a navigable slough was not a water of the United
States because a significant nexus did not exist between the
pond and the slough.  <u>San Francisco Baykeeper</u>, 481 F.3d at 707-
08.  This is because the evidence of the effect of the pond on
the slough was speculative or insubstantial insofar as there was
no evidence demonstrating that the pond significantly affected
the integrity of the slough, (e.g., there was no evidence that
any water ever flowed from the pond to the slough).  <u>Id</u>. at 708.
In <u>Northern California River Watch</u>, the court concluded that a
substantial nexus existed between a pond, its wetlands and a
navigable water to justify CWA protection because water from the
pond seeps directly into the adjacent Russian River and
therefore significantly affects the chemical, physical, and
biological integrity of a navigable water.  <u>Id</u>. at 1030.  In
finding a substantial nexus the court noted the following: (1)
there are surface and groundwater hydrological connections
between the wetlands and river, affecting the physical integrity
of the river; (2) the wetlands and the river are ecologically
connected insofar as the wetlands are an integral part of and
indistinguishable from the rest of the river's ecosystem; and
(3) choloride seeps from the pond and its wetlands into the
river, significantly affecting the chemical integrity of the
river.  <u>Id</u>. at 1030-31.

waters more readily understood as 'navigable.'  When, in
contrast, wetlands' effects on water quality are speculative or
insubstantial, they fall outside the zone fairly encompassed by
the statutory term 'navigable waters.'"  Id.[8]

---

[8]   The court notes that Lima Ranch's reliance on Rapanos to
support its argument for dismissal is misplaced.  Rapanos
involved whether a wetland lying near ditches or man-made drains
that eventually empty into navigable waters were within the
purview of the CWA.  Rapanos, 126 S.Ct. 2208.  There, the Court
ultimately remanded the consolidated cases for further
proceedings on the grounds that the Sixth Circuit applied the
incorrect standard for determining whether the wetlands at issue
were covered "waters" within the scope of the CWA because it
failed to consider all the factors necessary to determine
whether the wetlands at issue had the requisite nexus.  Id. at
2250-52.  In his concurrence, Justice Kennedy stated that the
Army Corps of Engineers assertion of jurisdiction - adjacency to
tributaries, however remote and insubstantial - was insufficient
to establish jurisdiction because the Corps was required to
establish a significant nexus when seeking to regulate wetlands
based on adjacency to nonnavigable tributaries.  Id. at 2249.
Justice Kennedy explained that the requisite nexus could be
established if the Corps showed that the wetlands, alone or in
combination with similarly situated lands in the region,
significantly affect the chemical, physical, and biological
integrity of other covered waters understood as navigable in the
traditional sense.  Id. at 2248.  Justice Kennedy further
explained that a "mere hydrologic connection should not suffice
in all cases [to establish the substantial nexus test]" because
"the connection may be too insubstantial for the hydrologic
linkage to establish the required nexus with navigable waters as
traditionally understood."  Id. at 2251.  Rather, the "required
nexus must be assessed in terms of the statute's goals and
purposes," which are to "restore and maintain the chemical,
physical, and biological integrity of the Nation's waters."  Id.
at 2248 (internal quotations and citations omitted).  With
respect to the instant matter, there is nothing in Rapanos
mandating a dismissal of this action.  Coldani has alleged that
Lima Ranch has discharged pollutants into groundwater that has
discharged into a navigable water.  As such, as a matter of

In the instant case, Coldani alleges that animal waste from Lima Ranch's dairy has infiltrated and polluted groundwater that discharges into the White Slough, which in turn empties into navigable waters, the San Joaquin River Delta System.  Compl. ¶¶ 32-34.  In short, Coldani alleges that Lima Ranch has polluted groundwater that is hydrologically connected to navigable waters.  Such pleading is sufficient to survive a motion to dismiss.

While Lima Ranch makes much of the fact that Coldani is alleging that groundwater is causing the contamination and pollution of the White Slough, it cites no binding authority supporting the proposition that the discharge of pollutants into groundwater that is hydrologically connected to navigable water, is outside the scope of the CWA.[9]  Moreover, the court is not convinced that precluding such circumstances from the regulatory purview of the CWA serves Congress' declared goal "to restore

pleading, dismissal is not warranted for a lack of subject matter jurisdiction under the CWA.

[9]    The court acknowledges that other courts have found that the CWA does not regulate discharges into groundwater whether groundwater is hydrologically connected to surface waters or not.  See Village of Oconomowoc Lake v. Dayton Hudson Corp., 24 F.3d 962, 965-66 (7th Cir. 1994); Town of Norfolk v. United States Corps of Engineers, 968 F.2d 1438, 1451 (1st Cir. 1992); Umatilla Water Quality Protective Ass'n, Inc. v. Smith Frozen Foods, Inc., 962 F.Supp. 1312, 1318 (D. Ore. 1997).  However, the court does not find the reasoning of these cases persuasive given the declared objectives of the CWA and the broad definition that Congress intended with respect to waters within the purview of the CWA.

and maintain the chemical, physical and biological integrity of the Nation's waters."  Nor is the court convinced that precluding such circumstances squares with the broad construction given to "waters of the United States."  As such, the court finds that because Coldani has alleged that Lima Ranch polluted groundwater that is hydrologically connected to surface waters that constitute navigable waters, he has sufficiently alleged a claim within the purview of the CWA.  <u>See</u> <u>Washington Wilderness Coalition v. Hecla Min. Co</u>., 870 F.Supp. 983, 990-991 (E.D. Wash. 1994) (holding that allegations were sufficient to support a claim under the CWA because they alleged a hydrological connection between seepage into groundwater and the nearby surface waters of a creek and lake); <u>Sierra Club v. Colorado Refining Co</u>., 838 F.Supp. 1428, 1434 (D. Colo. 1993) (holding that allegations that a defendant has and continues to discharge pollutants into the soils and groundwater beneath its property which then make their way to a navigable water through the groundwater state a cause of action under the CWA); <u>Williams v. PipeLine Co. v. Bayer Corp</u>., 964 F.Supp. 1300, 1320 (holding that discharge of petroleum into groundwater that is hydrologically connected to surface waters is a violation of the CWA); <u>Idaho Rural Council v. Bosma</u>, 143 F.Supp.2d 1169, 1180 (D. Idaho 2001) (holding that the CWA extends federal jurisdiction over groundwater that was allegedly polluted by a dairy that is

hydrologically connected to surface waters that are waters of the United States).[10]

Accordingly, as a matter of pleading, the court concludes that the allegations of the complaint are sufficient to survive dismissal.  However, the court cautions that Coldani bears the burden of demonstrating that pollutants from a point source affect surface waters of the United States, and that an allegation of groundwater pollution coupled with an assertion of a general hydrological connection between all waters, is insufficient to come within the purview of the CWA.  See Washington Wilderness Coalition, 870 F.Supp. at 990.

---

[10]   In Washington Wilderness Coalition, the court concluded that because the goal of the CWA is to protect the quality of surface waters, any pollutant which enters such waters, whether directly or through groundwater, is subject to regulation by NPDES permit.  Id. at 990.  The court explained that applying effluent limitations to tributary groundwater does not change the nature of CWA monitoring because plaintiffs must still demonstrate that pollutants from a point source affect surface waters of the United States, i.e., in order to come within the purview of the CWA, plaintiffs must trace pollutants from their source to surface waters.  Id.  In Sierra Club, the court concluded that because the CWA is interpreted broadly to give full effect to Congress' declared goal and policy "to restore and maintain the chemical, physical and biological integrity of the Nation's waters[,]" the Clean Water Act's preclusion of the discharge of any pollutant into "navigable waters" includes such discharge which reaches "navigable waters" through groundwater.  Sierra Club, 838 F.Supp. at 1434.  There, the court determined that allegations alleging that a refinery discharged pollutants into the soils and groundwater, which then made their way to a navigable river through the groundwater, are sufficient to state a claim under the CWA.  Id.  The court is persuaded by the reasoning of these cases.

2. "Point Source"

"The CWA regulates the discharge of pollutants and defines 'discharge of pollutant' as 'any discernable, confined and discrete conveyance from any point source.' 33 U.S.C. § 1362(12)."  Bosma, 305 F.3d at 955.  "Point source is defined to include a CAFO, and animal feeding operations come within the definition of a CAFO by having specified quantities of animals and discharging pollutants into navigable waters.  33 U.S.C. § 1362(14)."  Id.[11]  "The term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  33 U.S.C. § 1362(6).

If a dairy meets the requirements of a CAFO, it is considered a point source subject to "effluent guidelines" and is considered to be engaged in industrial activities.  Bosma, 305 F.3d at 947, 955.  A CAFO is subject to the NPDES permit requirement and therefore cannot discharge animal wastes without a permit or in violation of a permit.  Id. at 955.

---

[11]    In Bosma, the court observed that a CAFO is an animal feeding operation where animals are stabled or confined for a total of forty-five days or more in any twelve month period in an area where neither crops, vegetation or crop residue is sustained.  A CAFO also includes animal feeding operations with more than 700 mature dairy cattle).  Bosma, 305 F.3d at 955.

In the instant case, the allegations in the complaint are sufficient to establish that Lima Ranch is a CAFO.  Coldani has alleged that Lima Ranch is a diary ranch engaging in the following operations: feeding and stabling of 1,000 or more dairy cows, milking, collecting animal waste, storing animal waste, and discharging waste water onto open lands (i.e., manure spreading).  Compl. ¶ 3.  Moreover, Lima Ranch does not dispute that its dairy cows are stabled or confined for a total of forty-five days or more in any twelve month period.  Nor does Lima Ranch contend that crops, vegetation or crop residue is sustained on its ranch.  Finally, Lima Ranch does not dispute that it has more than 700 dairy cattle or that it engages in manure spreading operations.  As such, the court concludes that Coldani has sufficiently pled that Lima Ranch is a point source within the meaning of the CWA.  Accordingly, dismissal is not warranted on this ground.  See Bosma, 305 F.3d at 955 (because agricultural waste discharged into water is a pollutant constituting a large threat to the quality of the waters of the nation, the EPA is empowered to regulate CAFOs as point sources).

D.   NPDES Permit

Lima Ranch argues that Coldani cannot maintain an action under the CWA because he has failed to allege a violation of an order issued by the Administrator or State regarding a CWA

standard or limitation.   More particularly, Lima Ranch contends

that dismissal is warranted with respect to Coldani's CWA claim

because it has been operating under a valid NPDES permit and

Coldani has not alleged a violation thereof.   The court

disagrees.

The NPDES permit that Lima Ranch relies on relates to

discharges of storm water associated with industrial activities.

Exh. 3, attached to Def.'s Mot. for Dismissal.   As such, it is

of no consequence to Coldani's CWA claim because this claim is

based on Lima Ranch's discharge of a pollutant (i.e., discharge

of animal waste) into groundwater that migrates into navigable

waters, not discharge of a pollutant into navigable waters from

storm water run-off.[12]   Moreover, to the extent that the permit

authorizes non-storm discharges, including irrigation drainage

in compliance with Regional Water Board requirements, Coldani

has stated a claim under the CWA.   This is because, even

assuming that Coldani's allegations only pertain to irrigation

drainage, he has alleged that Lima Ranch's discharge of animal

waste is in violation of Regional Water Board Requirements.

Thus, to the extent that this permit is applicable, Coldani has

_____

[12]   Indeed, the permit referred to by Lima Ranch defines "storm water" as "storm water runoff, snow melt runoff, and storm water surface runoff and drainage.   It excludes infiltration and runoff from agricultural land."   See Exh. 3, attached to Def.'s Mot. for Dismissal.

alleged a violation of it.   Therefore, he has properly stated a claim under the CWA.[13]

For these reasons, dismissal of Coldani's CWA claim is not warranted.

E.   RCRA Standing

Lima Ranch argues that Coldani lacks standing because he failed to properly allege that Lima Ranch disposed of any "hazardous waste" as defined by the Act.

---

[13]   To the extent that Lima Ranch seeks dismissal on the ground that Coldani failed to allege a violation of a CWA standard or limitation because he alleged violations of Water Discharge Requirements ("WDRs") established by Regional Board orders, the court rejects this argument.   This is because violations of WDRs are equivalent to violations of the CWA.   See City of Burbank v. State Water Resources Control Bd., 35 Cal.4th 613, 620 (2005) (citations omitted) (noting that "[u]nder the federal Clean Water Act, each state is free to enforce its own water quality laws so long as its effluent limitations are not 'less stringent' than those set out in the Clean Water Act."   The court also noted that in California, wastewater discharge requirements established by the regional boards are the equivalent of the NPDES permits required by federal law for enforcing effluent limitations and standards under the CWA.); Environmental Protection Information Center, 469 F.Supp.2d at 810, n.4 ("The EPA delegated its permit-issuing authority to California on May 14, 1973.   See 39 Fed.Reg. 26,061 (July 16, 1974).   California administers its portion of the NPDES program through the Porter-Cologne Water Quality Control Act ("Porter-Cologne Act"), Cal. Water Code § 13000 et seq., which, in turn, created a group of Regional Water Quality Control Boards charged with the responsibility of issuing Waste Discharge Requirements ("WDRs").   By every relevant measure, WDRs are equivalent to CWA permits, and in every relevant sense for this action, the Porter-Cologne Act imports its definitions from the CWA, including those for 'pollutants,' 'discharge,' and 'point source.'   See Cal. Water Code § 13373.")

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste.  Congress' overriding concern in enacting RCRA was to establish the framework for a national system to insure the safe management of hazardous waste."  Safe Air for Everyone, 373 F.3d at 1041 (internal quotation marks and citation omitted).

In the present case, Coldani seeks relief under the "citizen suit" provision of the RCRA.  Thus, in order to state a claim, Coldani must allege that Lima Ranch is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.  42 U.S.C. § 6972(a)(1)(B).  Coldani does not allege that Lima Ranch's discharge of animal waste is "hazardous waste" within the meaning of the RCRA.  Rather, Coldani simply alleges that animal waste is "solid waste" within the meaning of the RCRA.

"Hazardous waste" is defined under the RCRA as: "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may-- [¶] (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or [¶] (B) pose a substantial present or potential hazard to human health

or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."  42 U.S.C. § 6903(5). "Solid waste" is defined under the RCRA as: "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 1342 of Title 33, [i.e., Clean Water Act] . . . ."  42 U.S.C. § 6903(27).  "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any . . . concentrated animal feeding operation . . . from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).

In the instant action, Coldani has alleged that Lima Ranch is a concentrated animal feeding operation discharging solid waste (i.e., animal waste) into navigable waters from a point source (i.e., concentrated animal feeding operation).  As such, Lima Ranch is subject to a NPDES permit.  Therefore, the court concludes that because the animal waste discharged by Lima Ranch constitutes industrial discharge from a point source subject to

NPDES permits under the CWA, it is excluded from the definition

of "solid waste" under 42 U.S.C. § 6903(27).  <u>See</u> <u>Williams</u>, 964

F.Supp. at 1328-29 (holding that petroleum discharged into

groundwater was excluded from the definition of "solid waste"

under the RCRA because it constituted industrial discharge from

a point source subject to NPDES permits.  The court therefore

declined to exercise jurisdiction under the RCRA to avoid

duplicative regulation under the CWA); <u>State v. PVS Chemicals,</u>

<u>Inc</u>., 50 F.Supp.2d 171, 177-78 (W.D.N.Y. 1998) (holding that

that RCRA's industrial wastewater exclusion applied to

unauthorized discharges of pollutants from a point source

subject to permit under the CWA because to hold otherwise would

subject the discharges to duplicative regulation under both the

CWA and RCRA.  The court explained that the purpose of the

industrial point source discharge exclusion is to avoid

duplicative regulation of point source discharges under the RCRA

and CWA because, without such a provision, the discharge of

wastewater into navigable waters would be "disposal" of solid

waste, and potentially subject to regulation under both the CWA

and RCRA); <u>Inland Steel Co. v. Environmental Protection Agency</u>,

901 F.2d 1419, 1423 (7th Cir. 1990) (observing that the purpose

of the exception in section 6903(27) of the RCRA is to avoid

duplicative regulation, not to create a regulatory hole through

which billions of gallons of hazardous wastes can be pumped into the earth).

Accordingly, in order to avoid duplicative regulation, the court declines to exercise jurisdiction over Coldani's RCRA claim.  Therefore, Coldani's RCRA claim is dismissed.

### III. CONCLUSION

For above stated reasons, the Court GRANTS in part, and DENIES in part, the motion to dismiss.

IT IS SO ORDERED.

ENTERED this 14th day of August, 2007.

s/RALPH R. BEISTLINE
United States District Judge